Good morning. May it please the Court, Sean McCoy, Deputy Attorney General. If I may, I'd like to reserve two minutes for rebuttal. With respect to the proper pronunciation of the warden's name, the warden of San Quentin changes frequently, so we don't bother to memorize it. In Rines v. Weber, the Supreme Court applied a total exhaustion requirement to federal habeas. Under 2254B, the district court is prohibited from granting relief on a mixed petition. Rines imposed a total exhaustion requirement holding that the district court must dismiss without prejudice a mixed petition so that the petitioner may return to state court and exhaust his remedies. In this case, the district court was confronted with a mixed petition. There is no dispute about that. Twenty-one claims are unexhausted, Petitioner. The habeas petitioner concedes that. The district court recognized that. When the warden sought to bring a motion to dismiss in 2011, merely indicating that it was his intent to do so, the district court summarily refused, saying no, and ordered Petitioner, the habeas Petitioner, to respond within a certain amount of time whether he would dismiss those claims or seek to stay in abeyance. Petitioner, the habeas Petitioner, did not respond until earlier this year when the habeas Petitioner sought to withdraw those claims, and the district court denied that request, saying that because the claims were pending in state court, they would be exhausted at some point and that there was no need to do so. The warden contends that is an error. The claims that the district court denied, the district court denied the claims and the district court denied Petitioner the claims. Sotomayor, would you be comfortable if Petitioner had responded to the claims? Well, that's sort of sensible, isn't it? Not at all. It offends comedy, first off, because of the fact that the district court is doing what it cannot do under Rines and Rose v. Lundy. Well, he didn't say he was going to go ahead and decide them. He just said, I'm not going to dismiss them and create a problem of refiling, because I think that the State court will deal with them. Well, Your Honor, the Supreme Court meant what it said when it said that the district court has no discretion except to dismiss a petition with leave without prejudice, so the petitioner But I didn't ask you what the Supreme Court said. I just said it sounds kind of sensible to say I'll just keep them here because the State court is going to rule before I have a chance to get to them anyway. Well, that assumes that the State court is going to do what Petitioner expects. We don't know. In either case, that requires that the case is being legiticated in two separate courts at two separate times. That offends comedy. Under Rose and Rines, the Federal court must wait. The State court is perfectly capable of adjudicating constitutional issues and deciding them and granting relief. The Federal review under Heth under The district court didn't say it was going to decide them before the State court decided them. Under Rose and Rines. I understand. I understand. Well, with due respect, Your Honor, there's no middle ground. There's no middle ground. This is not a situation where the Federal court gets to decide. What harm there is in doing that? The harm is that the harm is to the State. The State, both as custodian and as the holder of the judgment of execution in this case, in that the State must adjudicate in the California Supreme Court at the very same time as adjudicating in the Federal court when the law is clear. Either the Federal court waits or the habeas Petitioner withdraws his claims and elects to proceed on an adjudicated petition. Well, if he'd withdrawn his claims that were unexhausted, though, you'd be litigating in both courts at once, right? That doesn't seem to be unusual. The claims, the unexhausted claims are pending in the active petition in Federal court. At this juncture, there's no question about whether those claims are properly filed. There's no question about the statute of limitations. There's no question about relation back. The Federal court can dance along and do everything but, and then decide, well, what claim shall we move to next? What happens in the case of the claim that the district court wishes to proceed on if the Federal court chooses to deny relief on that claim? It then moves on to another and another. And all this time, Petitioner is under no obligation to go back and exhaust. In this particular case, the Petitioner has a habeas petition filed in State supreme court. He contends in his briefing that it is fully exhausted. That is a mischaracterization of State law. What has happened so far in State court is simply that a petition has been filed and the State has filed an informal response. A habeas petition in State court is not fully briefed until the State supreme court chooses to issue an order to show cause, triggering the operative pleading, which is called the return and the traverse. Kagan. If we agree with you that the district court made a clear error when it denied the motion to withdraw, why didn't you file for reconsideration? Clear error is a basis for reconsideration, right? That's true. It is. The and perhaps we could have proceeded that way. However, we have twice brought up this issue. We've twice brought up the issue of the fact that there are unexhausted claims. We raised it initially, and the court conceded that we would do briefing on the claims where there was dispute over whether they were exhausted. The district court said, we're not going to permit you to leave to file a motion to dismiss. Then, subsequently, prior to that. But the district court wanted briefing on what was exhausted, right? So at that point, the district court wasn't denying that unexhausted claims were a problem that needed to be dealt with. Not so. There were clearly unexhausted claims in the petition at that time. Even in 2011, it was recognized that there were unexhausted claims. There was a question as to other claims, whether those claims were, in fact, exhausted. Those claims where there was dispute between the habeas petitioner and the warden, that was what the briefing was on. Then, when most recently. But the briefing was to figure out how many unexhausted claims there were, right? It wasn't like there was a decision at that point to keep the unexhausted claims. The briefing was to discern whether the claims that where exhaustion was disputed had been exhausted. The warden took a position that certain additional claims, in addition to the 20 or so unexhausted claims, were also exhausted. The habeas petitioner took a different position. We agreed that the district court could resolve those prior to Petitioner either dismissing the unexhausted claims or seeking a stay in abeyance. When we get to March, February of this year and March, the habeas petitioner elected to withdraw those claims rather than seek a stay in abeyance, and the district court refused that request. So, counsel, when did you mention comedy, and it's the State's interest, when did the State understand that the district court was going to go on this kind of dual, I call it dual track. The Supreme Court says no dual track, you know, it's only got to be going on one highway at one time. When did the State know that that was not happening in this case? Well, wasn't that 2011? No, not necessarily. And in any event, it ultimately, I don't know that it matters. I think it does matter because you have to, if you didn't assert your right promptly, that's a factor for mandamus. So the question is, counsel, when did the State, I mean, I understand you would not like us to think about it too much, but when did the State know that they were going to go on this dual track? Well, latches doesn't apply. Counsel, the question is, when did the State know that they were going to go on a dual track? Definitively, March 4th, 2014, when the district court denied the request to withdraw the unexhausted claim. So you're saying the State had no inkling that this was coming until March of 2014? Even though you were briefing an unexhausted claim. We are not responsible for why should Petitioner be, the habeas Petitioner, be rewarded for his own unwillingness to answer the district court's question. Counsel, the question here, again, as I've tried to frame it here, there is an issue. This is under mandamus. This is an extraordinary remedy you're asking this court to do. Now, certainly, as soon as you got wind of it in 2011 that something's not going right here, a lot of these arguments make sense to me. But to wait half the length of the Civil War before we start this makes me think that why is this extraordinary remedy required? Well, what is the result if this Court chooses not to grant the writ? What is the result if this Court chooses to say there's nothing wrong with what the district court has done? You invite Petitioner. We wouldn't have to say that. We could just say we think it was clear error, but the State didn't say anything for three years, so we're not going to grant mandamus. And, therefore, you leave the status quo. You invite Petitioners to never bother to exhaust, because, well, as long as the district court never gets up to that final point where it has to grant relief, who cares if they don't exhaust? No, no. We would say it's clear error. The district court should have dismissed the unexhausted claims, granted the motion to withdraw, but the State didn't file for mandamus three years ago, and so we're not granting mandamus. And if another case comes up, they can seek mandamus sooner. Three years ago, had we filed for mandamus, you would have found that we were not without remedy because of the fact that the district court had directed Petitioner to respond and file a response as to whether he was going to withdraw the claims or seek stay in abeyance. Three years ago, we would be saying, order the district court to act. Order the Petitioner to file, and you would say you're not without remedy. We're now without remedy. Well, you could have said to the district court, wait, wait, wait, there's still unexhausted claims. You could have said it more times. We've raised it with Petitioner. We've raised it with the district court. The district court has chosen to reject our recitation of the fact that there is unexhausted claims here. How many can you point to how many times and when you raised it with the district court? We raised it in 2011 when we asserted that the Petire petition needed to be dismissed. The district court, without even allowing us to file a motion to dismiss, said no. We are not allowed to you're not allowed to file a motion to dismiss. We raised it again. So if that's why couldn't you have filed for mandamus then? We would not be without remedy, or so you would say, because of the fact that we had agreed to brief the status of the unexhausted claims. Furthermore, what would we be seeking mandamus for? We would be seeking mandamus to compel the district court to allow us to file a motion to dismiss. That's still an exercise of discretion. Mandamus doesn't lie for an exercise of discretion. So what was the next time you raised it with the district court? In 2011, as I said, in 2012, the district court resolved the exhaustion questions but did not assess the status of the unexhausted claims. In 2013 But that didn't sound like you raising it, right? There was nothing raised. That was the subsequent order. There was nothing raised at that point. In 2013, the district court determined that the disposition of Claim 11 was unreasonable and ordered an evidentiary hearing on that claim and directed the parties to meet and confer. At that time, we had sought to appeal from that order, but the appeal was not properly taken. The habeas petitioner has cited to this Court the Ninth Circuit Stanley decision, which held that an order on the in that case, an order finding a claim unexhausted was not appealable. That appeal was withdrawn. In 2014, the next order, the habeas petitioner requests to withdraw his unexhausted claims. The habeas petitioner attached an e-mail exhibit where we noted to him that the claims were still that was still a mixed petition and that we intended to bring a motion to dismiss again, and the habeas petitioner at that point sought to withdraw his claims. The district court denied that request. I submit that we have been as prompt as the district court would allow us to be given the briefing schedule that has been set. Otherwise, we would the file would be replete with us filing simply frivolous what the court might ultimately consider would be frivolous requests to file a motion that it has already refused us leave to file, a motion to dismiss. You didn't seek reconsideration of that denial either, though. It seems like there you could have raised this more times with the district court. You could have said, district court, you have unexhausted claims, unexhausted claims at the same time here, and you're not allowed to do that. We are not required to raise frivolous objections and requests for reconsideration when it is clear that the district court is not going to honor them. The district court is as well aware of Rose v. Lundy and Rines as this Court is or as we are. The district court cited both of those cases in its order refusing to allow the petitioner to withdraw the unexhausted claims. So counsel, oh, go ahead, Judge Maynard. I just was going to say, he doesn't have to use all his time. Well, I was going to say, so what was it in March of 2014 that fundamentally changed so then you did file the mandamus? What was this new factor event? Well, the new fact in 2014, March of 2014, is that in March of 2014, the habeas petitioner agrees with us that there are unexhausted claims, agrees with us that this is a mixed petition. There's no dispute of that fact. Even the district court recognizes it. And the habeas petitioner elects at that point not to request a stay in abeyance. He wants to proceed on the claim. The habeas petitioner says to the district court, I wish to withdraw these unexhausted claims. If necessary, I will seek to amend to add them back in later. Under Male v. Felix, he would have to meet all the factors there. And the district court says, no, I am not going to grant you leave to withdraw the claims. You didn't seek a stay in abeyance. I'm going to leave these unexhausted claims in, and I'm going to proceed. Because under this interpretation of total exhaustion, as long as I do everything but ultimately grant relief, then I'm fine. Comedy is not offended. And that is clear error. If there are no further questions, I'll reserve the rest of my time for the following. Roberts. Thank you, counsel. Thank you, Your Honor. May it please the Court, Harry Simon for real party and interest, John Michael Beans. I think the Court has identified what is, from our point of view, the central issue here, whether the warden has a clear and indisputable right to mandamus. And I think you really do need to look at the chronology of the warden's actions here to determine whether or not that's true. In May of 2012, the Court issued its order regarding the exhaustion status of all briefs on Claim 11, and we submitted a schedule for briefing of the merits of Claim 11, which is a fully exhausted claim. And following that, in September of 2012, we submitted our brief in support of Claim 11. The Attorney General submitted their answer to the answering brief on Claim 11 in December of 2012. And we filed our reply brief in support of Claim 11 in March of 2013. All these proceedings were occurring on a fully exhausted claim within a mixed petition. The petition was still mixed. The Court issued its order regarding Claim 11 on – in October of 2013. And at that point, a notice of appeal was filed by the Attorney General, which was later dismissed because this was a non-appealable order. The Court had directed us to talk to the Attorney General about how we wanted to proceed with regard to an evidentiary hearing. Only then, in December, at around the same time as they were dismissing their appeal, they raised with us, not with the Court, but with us, the fact that we were still proceeding on a mixed petition, that they objected to that. And in February, because we did want to proceed on Claim 11 to obviate any objections, we withdrew our unexhausted claim. The next month, and we set forth a schedule. Sotomayor, you asked to withdraw. Yes. What? You asked to withdraw. We asked to – you're right. We asked to withdraw. We set forth a schedule. And in March, the Court responded to us and stated that they would grant our schedule. May of next year, we will have our hearing, our evidentiary hearing. And the Court determined that we did not need to withdraw our exhausted claims in order to do that. But the matters are still pending before the Supreme Court. The matters are still pending before the Supreme Court. They've been fully briefed. Didn't the district court say something about when – in setting the hearing for, what, May of 2015? May of – May of 2015. They said that, indeed, in all likelihood, the matters would have been resolved by that time. They've been fully briefed now for almost 20 months. And the Court actually – the California Supreme Court actually requested briefing on only four of, I think, 24 issues. So it was fairly limited. So we think in all likelihood that, indeed, will happen. So are you arguing it wasn't an error to deny the motion to withdraw? Well, I think we're – this presents a somewhat novel question. Certainly – certainly, Rose v. Lundy implements a total exhaustion rule. Rhines modifies that somewhat. But we do have a problem of delay in the Supreme Court of California, do we not? We do. The California Supreme Court typically does delay. And so we can't know how long they'll take. In all likelihood, they'll issue a postcard denial, which will be a summary denial, telling us virtually nothing about the underlying merits of the case. We can't – The ineffect – there's no – there's never been any question of the ineffectiveness claim that is – what is it, 11? Yes. That that is exhausted. There's no – there's no dispute about that. The exhausted status of that was fully litigated. And the Court found it was fully exhausted. And it seems to us that it does make sense for us to get as far as we can on this. The parties were – have spent a significant amount of time resolving the issue of whether or not we surpass 2254d, which was a major, a large, large issue in the case. This is a death penalty case? This is a death penalty case. And the underlying claim is ineffective assistance of counsel for guilt phase based upon trial counsel's total failure to present evidence challenging the pathology regarding cause of death, which is the central issue in the case. So we've got an inmate who has now been incarcerated for 19 years with a claim that satisfies 2254d, which is a guilt innocence claim, really. And for that reason, we are anxious to get as far as we can. Why didn't you move to withdraw the unexhausted claims earlier? I came into the case later on, and I came in after the expiration of the time when we were supposed to do that. So I wasn't really even focused on that. I was really focused on briefing. Was the Petitioner – was your client represented by other counsel then? My client was represented by predecessor counsel, now magistrate judge, Alice I was representing her at the time, along with co-counsel, yes. But I came along here later. The other thing I think that is important about this chronology is the arguments that have been made to you with regard to Rose and Rhines were never made to the district court. In fact, they were first made at, you know, they stated their intention to talk about that in – with the district court, to file a motion to dismiss. But they certainly didn't raise those – they didn't request reconsideration of the court's order. So I think it's unseemly that this is the first court that has really had these issues directly briefed. All right. Thank you. Oh, any other questions? Thank you very much, counsel. And, counsel, in your rebuttal, if you could address the point Mr. Simon made about the first time Rose and Rhines were cited in this litigation. Well, that goes back to my earlier point that we were never given an opportunity to bring the motion to dismiss. The district court refused us leave to do so. We did not seek reconsideration of that peremptory order from December 19, 2011, because the district court directed the Petitioner to elect, withdraw the claims or seek stay in abeyance. Counsel, my question again was the first time that they were cited. Is he correct that the first time they were cited, that this argument was made, was to this court? Rose and Rhines were cited by the district court in its March 2014 order. So the district court was well aware of Rose v. Rhines. The district court's March 4, 2014 order did not involve any responsive pleading from the warden except agreement with Petitioner's request, Habeas Petitioner's request to withdraw the exhausted, the unexhausted claims. My question is, Mr. Simon has suggested that the first time this argument was made, you know, hey, hey, court, Rose and Rhines, you can't do this, you can't do this, was to this court. Is that correct? Has the State of California previously asserted, district court, you can't do what you're doing under Rose and Rhines? Phrased in that sense, yes. However. When? Well, yes, we've got double negatives on you. This is the first time you're saying? This is the first time that we have affirmatively asserted that the district court is violating Rose and Rhines. However, it doesn't matter. The district court is well aware of the fact that it's violating Rose and Rhines. But counsel, comedy is something that the State must assert. The Supreme Court has said that many times. The State must assert comedy. Sometimes the State may not want to do it. They may want to get this thing over with. Exhaustion must be affirmatively waived. We have not affirmatively waived exhaustion. We can't waive it by inaction. We must affirmatively say we waive exhaustion. You've taken steps, but counsel, you've taken steps, not you, I'm saying the State of California has taken steps in this case. Going through the chronology again, I believe in 2012, for example, there's back and forth briefing on the merits of Claim 11. If someone is talking about the merits of Claim 11 and litigating whether it was a good IAC or a bad IAC, that suggests to me that they're okay doing that. They're not saying, stop, we're going down the wrong freeway here. The district court directed the Petitioner to, the habeas Petitioner, to make an election. Petitioner failed to do that. At the same time, the district court ordered briefing on Claim 11. Are we to disregard the district court's order of briefing? Are we to say, no, we refuse, sanction us if you must, but we're not going to brief a claim when the Petitioner has failed to object? Is that what you're going to do? Or at least point out that you have a problem here. You could file the brief, but have a big note at the beginning that says this is a mixed petition. So the warden is penalized. The State of California is penalized because it fails to timely assert or more timely assert exhaustion, which it cannot waive except by direct affirmative waiver. And the Petitioner is then rewarded for his own decision to ignore the district court order until the very last moment. It's a paragraph and a brief, isn't it, counsel? Excuse me? It's a paragraph and a brief. You could have asserted this, correct? It's quite understandable that you would want to brief it and get the whole thing dismissed. You know, get that dismissed, but I don't know. When the habeas Petitioner asks the district court to withdraw his unexhausted claims, when the habeas Petitioner says to the district court, Your Honor, the warden reminds me that this is a mixed petition, I wish to withdraw my unexhausted claims, would you have us then say, You're right, it's a mixed petition, Rose v. Lundy and Rines. We want to fully brief Petitioner, habeas Petitioner's request to withdraw the unexhausted claims, when we instead simply say, We agree. The claims need to be withdrawn, allow him to withdraw them, we will assert any appropriate defenses at which at the point in time that he chooses to reassert them. And that was in 2014? That was earlier this year, yes. Right. So again, we're talking about 2012. Or even 2011. Again, I'll submit it on that.  The matter is submitted.
judges: SCHROEDER, OWENS, FRIEDLAND